UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CAROLYN SUE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-007-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Carolyn Sue Williams and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration [Record Nos. 10, 12] Williams contends that the Administrative Law Judge ("ALJ") erred by failing to consider all of her severe impairments and in her consideration of the opinion evidence. The Commissioner contends that the ALJ properly evaluated the evidence of record and that the decision should be affirmed because it is supported by substantial evidence. For the reasons that follow, Williams' motion will be denied, the Commissioner's motion will be granted, and the administrative decision will be affirmed.

## I.    Procedural History

Williams filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") on December 30, 2014. [*See* Administrative Transcript, hereinafter "Tr.," 146.] Williams requested a hearing before an ALJ after the application was denied initially and on reconsideration. [Tr. 88, 97, 104] She appeared before

ALJ Davida Issacs at an administrative hearing in Lexington, Kentucky in November 2016. [Tr. 28-61] Thereafter, ALJ Isaacs denied benefits in a written decision dated February 1, 2017, which the Appeals Council affirmed. [Tr. 8-21, 1-4] As a result, the claimant has exhausted her administrative remedies and this matter is ripe for review under 42 U.S.C. § 405(g).

## II. Background

Williams was 42-years-old and had a tenth-grade education at the time of the ALJ's decision. [*See* Tr. 146, 21, 36.] She worked at a market from 2009 through 2010, where she opened the store and prepared food. [Tr. 53] Williams complained of hypothyroidism, bilateral carpal tunnel syndrome, neck pain, shoulder pain, knee pain, peripheral vascular disease, and a history a breast cancer (which was in remission) at the time of her application for SSI benefits. [Tr. 31-34, 41-43] She still took medication for breast cancer, which she reported caused memory problems. [Tr. 50]

Williams reported that leg and back pain were her most limiting conditions and stated that moving or standing made the pain worse. [Tr. 36-37] She took Robaxin and Mobic, which reduced the pain to a degree. She believed that she could lift and carry five to ten pounds without significant pain and that she could stand or walk twenty to thirty minutes at one time. [Tr. 47] She felt that she could remain seated without changing positions for about twenty minutes. *Id.*

Williams lived with her husband and adult daughter. [Tr. 48] She reported that, on an average day, she goes outside and sits on the porch for a while. *Id.* Williams also reported doing dishes on occasion, but that her husband and daughter did the bulk of the household

chores.  *Id.*  She reported driving about three times per week, to the store and to medical appointments.  [Tr. 49]

Tabitha Culver, M.D., was Williams' primary care provider when Williams discovered a lump in her right breast in 2014.  [Tr. 542, 547]  Williams underwent a lumpectomy in December 2014 and received oral chemotherapy treatment.  [Tr. 278-80]  She had not had any recurrence of cancer at the time of the ALJ's decision.  [Tr. 31]  Culver treated Williams for hypothyroidism, which as of October 2015, was reported as stable and moderate in severity.  [Tr. 326, 358]

An MRI of Williams' right knee revealed chondromalacia and meniscal degeneration in 2012.  [Tr. 266, 276]  Thomas Cervoni, M.D., performed arthroscopic surgery, but the symptoms had returned by 2014.  [Tr. 272-73, 335]  Greg Grau, M.D., evaluated her in November 2014 and noted that an MRI performed at that time was within normal limits.  [Tr. 338]  Grau referred Williams to physical therapy but, when PT did not help, he performed a second arthroscopic surgery on her right knee in March 2016.  [Tr. 339, 402]

Williams also complained of right wrist pain, for which she wore a brace and took NSAIDs.  [Tr. 419]  She underwent a carpal tunnel release in 2013 and EMG testing was negative for carpal tunnel syndrome in 2015.  [Tr. 691, 419]  By February 2016, her right wrist pain was improving with physical therapy treatment.  [Tr. 426]  Around this same time, Williams complained of left foot pain, but an MRI failed to reveal any abnormalities.  [Tr. 431]  She complained of problems with a trigger finger in the right long finger in May 2016, and Grau administered a cortisone injection.  [Tr. 698]  Williams continued to have problems, so Grau performed a trigger finger release in September 2016, after which she reported to be doing "very well."  [Tr. 706, 710]

Grau provided a medical source statement on June 7, 2016. [Tr. 527-29] He reported that, due to her right long trigger finger and bilateral shoulder pain, Williams could only occasionally lift up to ten pounds and frequently lift up to five pounds. [Tr. 527] He opined that she could stand up to two hours in an eight-hour workday, but could only do so for thirty minutes without interruption. *Id.* Further, he reported that Williams could never climb, balance, stoop, crouch, kneel, or crawl due to knee osteoarthritis. [Tr. 528] Grau also believed that her ability to handle, push, pull, and perform repetitive activities with her right hand were limited by her right trigger finger. *Id.* Finally, he commented that Williams should not be exposed to moving machinery. [Tr. 529]

State agency medical consultant Lisa Beihn, M.D., reviewed Williams' file on August 18, 2015. [Tr. 84] Having considered the medical evidence through June 2015, Beihn opined that Williams could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. [Tr. 81] Beihn believed that Williams could stand, walk, or sit for about six hours in an eight-hour workday and that her ability to push and pull with her right lower extremity was limited. [Tr. 82] She commented that Williams could frequently climb ramps and stairs, balance, and stoop, but she could only occasionally kneel, crawl, or climb ladders, ropes, and scaffolds. *Id.* Finally, Beihn believed that Williams should avoid concentrated exposure to vibration and even moderate exposure to hazards such as machinery and heights. [Tr. 83]

Beihn noted that Williams had "degenerative changes which could be expected to produce pain," but she deemed Williams' alleged limitations partially credible. [Tr. 83-84] Beihn discussed Williams' medical history at some length, including her normal gait, strength, and range of motion. [Tr. 83] Additionally, Beihn noted the significant diagnostic testing that

had been performed, which was largely unremarkable, aside from the degeneration in Williams' right knee prior to her second arthroscopic surgery. *Id.*

ALJ Isaacs determined that Williams did not have an impairment or combination of impairments that met a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. However, she concluded that Williams had the following severe impairments: breast cancer; right knee meniscal injury; and medial compartment chondromalacia. [Tr. 15] After considering the entire record, the ALJ found that Williams had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except she could

> sit up to eight hours in an eight-hour workday; stand/walk for up to six hours in an eight-hour workday; after standing/walking for 30 minutes, must be permitted to sit for at least ten minutes; no more than occasional climbing of ramps and stairs; no more than occasional climbing of ladders and scaffolds; no more than occasional kneeling, crouching, crawling, and balancing on uneven surfaces; unlimited stooping; no more than frequent handling of objects with the right dominant hand; and the claimant must avoid all exposure to unusual workplace hazards such as large, dangerous machinery and unprotected heights.

Considering Williams' age, education, work experience, and RFC, the ALJ concluded that there were jobs existing in the national economy that Williams was able to perform. [Tr. 19] Accordingly, she concluded that Williams had not been under a disability during the relevant period. [Tr. 21]

### III. Standard of Review

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v.*

*Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. § 416.920(e). If she can, she is not disabled. 20 C.F.R. §416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV. Discussion

### A. Failure to Find Severe Impairments

The claimant contends that the ALJ erred by failing to deem the following impairments severe: peripheral vascular disease ("PVD"); carpal tunnel syndrome; right trigger finger; osteoarthritis of the knee; and macromastia. *See* 20 C.F.R. § 416.920(c). Establishing a severe impairment at step two is a *de minimis* hurdle and is intended to screen out totally meritless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998). An impairment is not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.*

While the ALJ did not classify these impairments as severe at step two, she did find that Williams had severe impairments. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (upon the finding of at least one severe impairment, the ALJ must go on to consider limitations imposed by all impairments). Accordingly, the failure to characterize the impairments as severe is of little consequence. Instead, the relevant inquiry is whether all of the claimant's impairments were considered in determining her RFC. *Id.* (stating that error at

step two is reversible only if the ALJ fails to consider the claimant's impairments in the remaining steps of the disability determination).

The ALJ acknowledged that Williams had been diagnosed with PVD, but the medical record reflected that the condition was mild. [*See* Tr. 716] Williams has not pointed to any evidence indicating that the PVD caused functional limitations. [*See* Record No. 10, p. 11.] To the extent Dr. Kumar's note from June 2016 includes Williams' subjective report of leg pain when required to walk long distance, the RFC accounts for this by allowing Williams to rest after standing or walking for 30 minutes. [Tr. 714, 16] With respect to Williams' allegations of trigger finger and carpal tunnel syndrome, the ALJ noted that she had been treated for these conditions and was reported to be doing well. [*See* Tr. 15, 691, 695, 733.] And although these conditions had improved, the ALJ incorporated a handling limitation in the RFC. [Tr. 15, 18]

Despite her failure to characterize knee osteoarthritis as a severe impairment, the ALJ discussed Williams' right knee limitations at length. [Tr. 18] She noted that Williams had attempted conservative treatment and ultimately had undergone an arthroscopic medial meniscectomy in March 2016. *Id.* Although Williams improved significantly for several weeks, she experienced increased pain in June 2016, and diagnostic imaging revealed medial compartment chondromalacia. *Id.* The ALJ explained at length, consistent with the opinion evidence, that Williams' knee condition did not preclude all work, but limited her to medium work, as reflected in the RFC. *Id.*

Finally, the ALJ did not err in failing to classify macromastia as a severe impairment. The ALJ explored this issue and observed that macromastia is not a primary impairment but, instead, may lead to musculoskeletal impairments such as neck and shoulder pain. [Tr. 15]

The ALJ concluded that, at the time, such musculoskeletal impairments were not severe in Williams' case. *Id.* For example, Williams' shoulder and neck x-rays were negative. *Id.* Although Williams rated her pain as an eight out of ten at the time of her hearing, she said it was worsened by "lay[ing] on the couch with [her] head crooked" rather than activity. *Id.* at p. 43. The claimant has not identified any medical evidence (other than Dr. Rinker's general recommendation that Williams would benefit from breast reduction surgery) to indicate that Williams had functional limitations as a result of macromastia.

### B. Consideration of Opinion Evidence

ALJs must follow certain standards in assessing the evidence supplied in support of a claim for social security benefits. For instance, greater deference generally is given to the opinions of treating physicians than the opinions of non-treating physicians.[1] *Rogers*, 486 F.3d at 242. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record, 'then it will be afforded controlling weight.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). When a treating physician's opinion is not given controlling weight, the ALJ must consider a number of factors in determining how much weight is appropriate. *Id.* These factors include: "the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.*

In the event a treating physician's opinion is not given controlling weight, the ALJ must provide good reasons for the amount of weight given to the treating source's opinion. 20

---

[1] This rule applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 416.927.

C.F.R. § 416.927(c)(2). This permits meaningful review of the ALJ's decision and allows the claimant to understand the reasons for the ALJ's decision. *Wilson*, 378 F.3d at 544-45. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, *5 (July 2, 1996).

Here, the ALJ assigned "little weight" to Dr. Grau's opinions and gave good reasons for this determination. [Tr. 19] Grau's opinions were largely inconsistent with the record, including his own treatment notes. *Id.* Specifically, Grau recommended a ten-pound lifting restriction in June 2016, even though he performed right-wrist carpal tunnel surgery and released Williams to return to work with no restrictions in March 2013. [Tr. 527, 696] Grau performed Williams' trigger finger release in September 2016 and, in October 2016, reported that she was "doing very well" and not using any pain medication. [Tr. 706] Grau also commented in October 2016 that Williams' carpal tunnel syndrome had been addressed successfully with a carpal tunnel release. *Id.* Grau simply did not provide any objective information to support the upper extremity limitations he assessed. In fact, his treatment notes throughout 2015 and 2016 consistently rate Williams' right elbow, hand, and wrist range of motion as intact, and grip strength as five-out-of-five. [*See* Tr. 416-27.]

The ALJ also gave sufficient reasons for giving little weight to Grau's opinion that Williams could only stand and/or walk for two hours in an eight-hour workday. [*See* Tr. 19, 527.] The only "medical finding" that Grau cited in support of this opinion was "knee osteoarthritis." [Tr. 527] Grau performed surgery to repair a meniscus tear in Williams' right

knee in March 2016. [Tr. 402] However, even in the months preceding that surgery, Grau acknowledged that Williams' gait was normal and her range of motion and strength were within functional limits. [*See* Tr. 416-27.] Shortly after the surgery, Grau reported that Williams was "doing very well," with "good pain control." [Tr. 428] By April 2016, Williams reported "some mild stiffness and activity-dependent swelling," but she had experienced no catching, locking, or giving way, and reported "significant improvement" compared to her preoperative status. [Tr. 429] The ALJ also noted that Grau rendered his opinion only a few months after Williams' knee surgery, during which time William was still recovering. [Record No. 19]

Williams also argues that the ALJ erred by disregarding the opinion of Brian Rinker, M.D., a cosmetic surgeon who (apparently) saw Williams once in October 2016. [Tr. 736-39] Rinker stated that Williams was a good candidate for breast reduction surgery and believed it would, at least in part, relieve her back, neck, and shoulder pain. [Tr. 739] However, Rinker did not provide any sort of opinion regarding Williams' ability to perform work-related activities. Accordingly, it is unclear what "opinion" Williams contends the ALJ disregarded. As already explained, the ALJ reasonably determined that macromastia was not a severe impairment, but considered the limitations associated with the condition, to the extent they are supported by the record.

### C. Substantial Evidence Supports the ALJ's Decision.

The ALJ is responsible for reviewing all of the evidence, including all medical evidence, in making her determination. 20 C.F.R. §§ 416.927(c)-(e); 416.945. ALJ Isaacs engaged in a concise yet thorough review of the record, indicating that she had reviewed all of the medical evidence, as well as the opinion evidence and Williams' pain questionnaire and

function report. [Tr. 8-21] Williams also appeared in person at an administrative hearing before ALJ Isaacs in November 2016. [Tr. 28-61] The ALJ noted, in a detailed discussion, that Williams has been cancer-free since December 2014. [Tr. 15] Further, recent imaging tests revealed only mild issues with Williams' right knee. [Tr. 18] The ALJ also discussed Williams' reported daily activities, which included cleaning, laundry, cooking, mopping, and sweeping. [Tr. 18, 185-87]

The ALJ assigned partial weight to the opinion of State consultant Lisa Beihn, M.D, who opined that Williams was limited to light work with additional postural and environmental limitations. [Tr. 81-84] An ALJ may give greater weight to the opinion of a consulting source when a treating physician's opinion is not supported by the record. *See, e.g., Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376, 379-80 (6th Cir. 2013)). Beihn noted that Williams' grip strength was normal. [Tr. 83] She also reported that, although Williams complained of knee pain after her second knee surgery, her gait was normal and her lower extremity strength was intact. [Tr. 84] Beihn concluded that Williams had degenerative changes that could be expected to produce pain, but her alleged limitations were not fully supported by the evidence, including her relatively high level of day-to-day functioning. [Tr. 84]

The ALJ agreed that postural limitations were necessary based on Williams' right knee pain and went on to impose some greater postural limitations than those assessed by Beihn. For example, the ALJ concluded that Williams could only occasionally kneel, crouch, crawl, balance, or climb ramps, stairs, ladders or scaffolds. [*Compare* Tr. 18 & 82] The ALJ also found that Williams must be permitted to sit for at least 10 minutes after standing or walking for 30 minutes. *Id.* However, the ALJ concluded that there was no evidence to support Beihn's

assertion that Williams could not bend at the waist frequently. [Tr. 18] In fact, neither Beihn nor any other source cited any evidence in the record to suggest that Williams was unable to perform this activity.

The ALJ reasonably disagreed with Beihn's conclusion that Williams' ability to lift and carry was restricted to the light exertional level. [Tr. 18] Beihn did not identify any evidence in the record to support a lift/carry limitation and Williams has not pointed to any. An x-ray of the right shoulder in 2015 was normal, as was an x-ray of the neck in 2016. [Tr. 322, 404] There is no record of treatment for any relevant conditions other than Williams' history of right carpal tunnel syndrome and trigger finger. The RFC includes a handling restriction with respect to those conditions, which is greater than the manipulative restriction assessed by Beihn. [*See* Tr. 82.] Accordingly, the ALJ's decision is supported by substantial evidence.

V.     Conclusion

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.     Defendant Acting Commissioner of Social Security Nancy A. Berryhill's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

2.     Plaintiff Carolyn Sue Williams' Motion for Summary Judgment [Record No. 10] is **DENIED**.

3.     The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 8th day of June, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge